Okay, the last case in the morning docket is 513-0008. People v. James Sutton. Mr. Whitley. Thank you, Your Honor. Good morning, Your Honor, or actually good afternoon, Your Honors, and may it please the Court, Counsel. First of all, I want to thank the Court for recording a little extra time for oral argument today. The briefs filed in this case were necessarily long, and the reasons why is because James Sutton, my client, was subjected to a parade of errors in the Court below. Most of them fall into the general category of showing that his guilty plea was not knowing, intelligent, and voluntary. Therefore, he should have been permitted to withdraw it. There was also a related Rule 604D violation and ineffective assistance of counsel in plea and post-plea proceedings. Alternatively, we're here to argue that his sentence should be reduced because this case presents that rare instance where the punishment is greatly disproportionate to the crime, raising a constitutional issue. In fact, while we shouldn't even get to the sentencing issue, if we do, I submit that this is an even rarer instance where the 12-year sentence imposed on Mr. Sutton, who is only 17 at the time of the offense, with only one juvenile prior on his record, should shock the conscience of this Court. As to the guilty plea and related issues, the parade of errors include the following entries. First, the Court below failed to inquire and confirm whether there was or was not a plea agreement as required by Rule 402B. Second, because it failed to inquire and no one disclosed it, the terms of the agreement were not stated in open court as required by Rule 402B. Third, the Court failed to properly ask whether any threats or promises were made to obtain the plea as required by Rule 402B. Fourth, due to this compound failure to comply with Rule 402B, the Court failed to give James the critical warning that the Court is not bound by the plea agreement, and if he persisted in his plea, the disposition may be different from that contemplated by the plea agreement as required by Rule 402B. And, in fact, the disposition did turn out to be markedly worse than that contemplated by the plea agreement. Fifth, after James moved to withdraw his plea, on the very day that his attorney filed a Rule 604D certificate certifying that he had reviewed the 11-page transcript of the guilty plea hearing, the same attorney misinformed the Court that it had given James the admonition required by Rule 402B.3, allowing that error to stand and then form part of the basis of the trial court's decision denying the motion to withdraw. And then, sixth and finally, the Court should have granted the motion to withdraw the plea anyway because it was answered on a misapprehension of the law. The record caps serious doubt on James' guilt. Relatedly, he had a defense worthy of consideration by a jury, and all things considered, the ends of justice would be better served by allowing him to submit the case to a jury. Taken individually, but certainly taken together, these errors demand reversal of the order denying Mr. Sutton's motion to withdraw his guilty plea. And if we just look at the text of Rule 402B itself, that informs a lot of what I think should be the Court's decision here. It states that if the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The Court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement or that there is no agreement, and shall determine whether any forces or threats or any promises apart from a plea agreement were used to obtain the plea. None of these shalls were adhered to in this case. None of them. Not properly. What do you do when the State denies there's a plea agreement? Well, then there would be a contested issue of fact, but that did not occur here. The State was silent when Mr. Sutton, when James, the attorney, filed the motion to withdraw the guilty plea, and at that time, after the fact, then informed the Court that in fact there had been a negotiated agreement with a recommended cap. The State was silent. It did not contest this. So we have an officer of the Court saying, yes, there was a plea agreement. And the Court implicitly agreed with that because in the colloquy that followed, it assumed that there was an agreement and then proceeded to ask, well, is it your position that I didn't give James the warning, you know, that the sentence might be different in the plea agreement? And counsel said yes, which is the next category of error. But this exchange took place at the motion to withdraw the guilty plea. Correct. And, you know, I'm just looking, and I appreciate you attaching to your brief the transcript of the plea and the representation made by Mr. Olson to the Court. You know, it looks to me like there's nothing said about a cap. There's nothing said about a plea agreement. Right. The State says he wants to plead guilty. We want to order a PSI. We want to set a sentencing hearing. That sounds like an open plea to me. Exactly. But my response to that is that it goes directly to, number one, the ineffective assistance to counsel claim. It also goes to the Rule 604D failure because later on he, you know, he misinforms the Court that there was this, you know, that he had received, that James had received the warning when he had it. But also I think it's important to recall here that even if that initial failure was partly the failure of counsel and not of the trial court, the purpose of the rule is to protect the due process rights of the accused. So even if counsel's at fault, there's still a due process violation here, and this Court can have absolutely no confidence that this plea was knowing, intelligent, and voluntary when that never happened, when he didn't get that very critical warning. And we have, I think, controlling precedent here from this Court in the Wright case. Very old case, but it is still a good law that basically, in fact, quoting from the opinion, even if the only promise made by the State's attorney was to recommend a sentence and the defendant was never told that the promise was not binding on the Court, it cannot be said that the defendant's guilty plea was truly knowing and voluntary. This was before the passage of Rule 402-D3. 402-D3 basically codified that very rule of law, and I think the lesson from this is that the need to warn a defendant that the sentence imposed may be different from that contemplated by the plea agreement is so basic that it necessarily destroys any presumption that the plea was knowing, intelligent, and voluntary. And I think that's clearly the case here, where this whole cascade of failures. So, granted, counsel should have informed the Court at the guilty plea hearing. I understand that. But, number one, it was also the Court's duty to inquire whether there was a plea agreement, and that didn't happen here either. So I think there was a joint failure as far as that's concerned. And, secondly, the fact of the matter remains he didn't get a critical warning. Therefore, we cannot conclude that – or have any confidence that his plea was knowing, intelligent, and voluntary. In fact, in light of what eventually transpired, it's pretty clear it was not an intelligent plea. So you have all these failures, any one of which I think is fatal here and should have allowed – should go back to allow Mr. Sutton to withdraw his plea of guilty and plea adieu. And then, of course, on top of that, there was the 604D certification. The same day, he reads an 11-page transcript, certifies that he had read it. He'd raised all the issues. Well, there was two things that clearly he didn't do. Number one, if he had read carefully the 11 pages of the transcript, he should have realized that the Court didn't follow Rule 402B or 402D3, as I've just outlined. And then, secondly, he compounds that error by misinforming the Court, oh, yes, you did give him a warning, that the sentence might be different from the plea agreement. Thereby, clearly, we can have no confidence that the Court made an intelligent decision because it was misinformed by counsel. So we have that category of error, too. I think a pretty clear 604D3 violation. I don't think the Court needs to reach that because the 402 violations are so clear here. So for those reasons, I don't think that this Court even needs to get to the other issues. I think there's ineffective assistance of counsel aplenty. I briefed that. If the Court has any questions about it, we have an answer to it. And I also don't think the Court needs to get to the sentencing issue. I will only say briefly in regard to that that I think the Supreme Court case of Miller is controlling here. Basically, what the record shows is that James rode around in a car while the two actual perpetrators of the burglary performed the burglary. And after the fact, one of the gun-wielding actual perpetrators told him to retrieve a chain from the tree after the burglary had already transpired, which was then used to haul away the safe. That was it. That was his role, and he gets 12 years for this? That wasn't his only role. I mean, he participated in trying to get tools to open it. Well, Your Honor, respectfully, I think the record does not show that. The statement of facts that was accepted said that they went to the store, they did this, they did that. At the sentencing hearing and in the PSI, it says that he accompanied Mr. Darius Warners, one of the actual perpetrators, while he made the actual purchases of the tools. I know, but he was there at the Wal-Mart or the what was it? Well, accompanying someone with a criminal design as an observer while they're at the store I don't think rises the level of abetting the offense. This is after he got the chain. This is after he got the chain. Trying to get in. Yes. It must be right. It was afterwards where the not exactly men's material actual burglars proceeded to try to break into it. But, again, there was nothing in the record to suggest that he did anything more than riding around in the car or driven by his girlfriend, who if anyone facilitated it might have been the girlfriend, and he retrieved the chain. And that was really his role, to say that he, the person with only one prior, a very troubled youth, 17 years old, who had witnessed two stepfathers die. And, in fact, part of the reason I think he got involved in this, the record reflects, was that one of the perpetrators of burglary had tried to save his stepfather when he was drowning. So maybe there was some feeling that he owed this person for some reason. But that was it. He got one juvenile offense when he was 14 years old. That's it. And he gets 12 years for riding around in a car and fetching a chain. Was this a gun safe? I'm sorry? Was this a gun safe? Well, you know, they never, I think it was described that way. But, of course, since they never broke into it, I guess we don't know what's in the safe. They drug it down the street, though. Yes. They drug it down the street with the chain. Seven feet? I'm sorry? Was seven feet tall? I don't recall that specific fact, but that sounds right. Yes. Yes. So, otherwise, I think this was adequately brief. Again, I thank the court for the extra time. And there's no other questions, so I'll wait and see if we have anything in rebuttal. Thank you. Thank you, Mr. Whitney. Thank you. Okay. Ms. Gambit? It's all right.  It's hard. No. Good morning. Jennifer Gambit on behalf of the people. Um, the defendants issue one is predicated on his assertion that the plea was negotiated and not as, as I've noted appears from the four corners of the plea transcript, an open plea. So it's the parties here on appeal disagree about whether the record shows that the plea was negotiated. And it's the state's position that the plea hearing transcript shows an open plea. And on this record, where the issue of whether the plea was negotiated or open was not litigated at the post plea motion hearing, and not the basis of any factual or legal ruling by the trial court. The defendant hasn't shown why this court should instead credit the unsworn assertion of a post plea counsel about the nature of the plea. The defendant's assumption that the plea was negotiated is really contrary to the principles of appellate practice, that it's the appellant's burden to prove error. And that this court is informed to litigate factual issues that were never raised below. The defendant's asking that the state's silence be construed against it in derivation of the principle that silence is to be construed against the appellant. And here the record shows that the defense actually induced that silence by telling the court and the state that this factual allegation regarding the nature of the plea was not the basis for any post plea claim. What happened was that the defense counsel filed unsworn post plea motions to withdraw the plea and reduce the sentence. Both claimed that the plea was negotiated. But at the hearing on those motions, defense counsel repeated that factual assertion in the context of explaining the reason why he had filed both a motion to vacate the plea and a motion to reconsider the sentence. Though he explained that his quote main motion was the motion to reconsider the sentence. The court then asked defense counsel if he was alleging that the plea was negotiated. Counsel said yes. The court then asked counsel whether he was contending that the court had failed to advise the defendant that the court wasn't bound by any recommended cap. Counsel said no, that he thought the defendant had been so admonished. The court ascertained that the defendant's post plea claim was that the sentence was excessive and then denied those motions. And I don't see how that record shows that the plea was negotiated. And I think that the defendant recognizes that the record is insufficient because he's arguing both that the state conceded via silence that the plea was negotiated and claiming that the court assumed that the plea was negotiated. He does it again in the reply brief on page one, asserting that the court assumed that this allegation was true. But how? The court asked if the defendant was asserting that the plea was negotiated. I don't see how that question assumes that the plea was negotiated. And then the court asked if the defense counsel was basing any claim off of that factual assertion. Again, I don't see how the court asking that question accepts that factual premise. And the ruling certainly didn't assume that the plea was negotiated. Again, the ruling was made that the claim at issue, the claim that the defendant actually wanted the court to decide, was based solely on the alleged excessiveness of the sentence. And the defendant had argued that the sentence was excessive not based on any terms of any negotiated plea, but based on the personal characteristics of the defendant. So I don't see that the record contains any finding that the plea was negotiated, nor does it contain a concession by the state. Again, the nature of the plea was not an issue of fact litigated at this hearing. Defense counsel told the court that it wasn't the basis at any claim. Was the state supposed to interrupt the colloquy between defense counsel and the court and add after defense counsel told the court that he wasn't basing any claim on this factual assertion? And tell the court, well, it's a good thing that he's not basing any claim on that factual assertion because that factual assertion isn't even true. Do you know if the prosecutor was the same at the motion to vacate the hearing as at the plea hearing? Do you know, Your Honor? I don't know the answer to that. We used to run into that a lot. Sure. We'd have different prosecutors, so the second one wouldn't know unless it was written out. Yeah. I don't know the answer to that. I can only say that if the defendant had, if the defense counsel had based a claim on this assertion, then the court would have asked the state, well, what's your response to that? And then the state could have given a response to that. But instead, what's happened here is that the defendant, the plea transcript shows that the defense entered into what appears on four quarters to be a completely unremarkable open plea, a plea that was entered after the state told the court, quote, it's my understanding that, and then that the defendant would plead to residential burglary, a PSI would be ordered, and the case would be sent for sentencing, that that was the state's understanding, and then defense counsel agreed to that. What about the 604 affidavit? Yeah, sure. Not affidavit, but filing. Yeah. What do you think about that? Well, I note that the defendant's chief case, People v. Love, has never been followed in any case to invalidate any other facially valid Rule 604D certificate. Love really stands alone. And I note that it's the appellant's burden to prove error, and that this court can't presume its existence, and that the defendant in reply at 12 is asking, is saying that the, that he isn't asking this court to speculate as to the existence of error, but to make an inference as to the existence of error, and I, I submit that that's a distinction without a difference, that the case law says that the certificate itself is all that the appellant court is to consider. And, and that Love is distinguishable because in that case, the state actually conceded to the appellant court that counsel filed his certificate before examining the transcript. Of course, there's no such concession here. And, and, and I also note that, again, the claim that the plea was negotiated was not the basis of any post-plea claim below. And so to, to the extent that, that the defendant is, that the defendant's issue two is assuming that the plea was negotiated and that that's the basis for his claim, that, that that claim is answered by the state's answer to issue one, which is that he hasn't met his burden of showing that error, that the, that the plea was negotiated. I mean, you can imagine a situation at the, oh, excuse me. It's okay. You can imagine a situation at the post-plea motion hearing where the defense counsel said, yes, Your Honor, I am basing a claim, a post-plea claim on my contention that the plea was negotiated. And then maybe he would have called the defendant who was present at the hearing and asked him, well, what, what did you think? What was your belief when you entered into this plea? And then the defense could have, then the defendant could have said whatever he believed. And then the state could have said its belief. And then this court would have had a record because the, the judge would have issued a ruling either implicitly or explicitly rejecting or accepting the defendant's claim. But that's not what happened here. Instead, the defendant is raising for the first time in this appeal this factual question of whether the plea was open or negotiated. And he's assuming that it's negotiated based only on this unsporn assertion that wasn't the subject of any claim decided by the trial court. And, and, and presenting this claim at a time when the state is foreclosed from introducing new facts into the record. I, I'd also note that the defense today said that the defendant wasn't asked whether he received any threats or promises in exchange for the plea. However, my, my brief notes that on pages 15 and 16 of the transcript, the court did ask those questions and the defendant did give the appropriate responses. And, and again, the defendant said he received no promises in exchange for the plea. But now the, the claim is that the defendant did receive a promise in exchange for the plea. It's just a promise that, that the defendant wasn't asked about at the post plea motion hearing. I mean this claim is, is forfeited and there's just not a sufficient record for the defendant to prove his claims, his claims here. The defendant in the reply brief at page one says that assertions of defense counsel in court at the post plea motion hearing are almost as good as sworn statements. My response is that will defense counsel at the plea hearing agree with the state's understanding that the, that the defendant would plead guilty and that he would be sentenced. So which, which assertion should we credit here? The, the defendant is arguing that the plea, and, and the defendant assuming that the plea was negotiated is arguing that that means that the plea is presumptively unintelligent and involuntary because he wasn't given the admonishments. At pages eight and nine of the reply brief here, he notes that the admonishments are designed to ensure that the plea is voluntary. But it's still the defendant's burden to show that he was prejudiced from an admonishment error. And there's no evidence in, in this record that he believed that the court couldn't sentence him to more than nine years. In fact, the court, the record of the plea hearing shows that the court told him that he could be sentenced to 15 years. The, the defendant responds that well we shouldn't believe his, his statement at the plea hearing that, that there were no promises made to him. But, but, but of course that's, that's speculation and, and, and the court shouldn't credit that speculation here on appeal. As for the defendant's reliance on the right case, the state in its answer brief distinguishes right at some length. I'd only point out that like the love case, right, is another case in which the state conceded error. The, the state conceded that he wasn't clear with the defendant in that case and said that he wouldn't oppose withdrawal of the plea. And that, that the trial court for some reason still denied the defendant's motion to withdraw. And then there was an appeal and the appellate court, unlike the trial court, accepted the state's concession. And here of course there's no, unlike the right case, there's no allegation that the defendant actually believed that he would receive a sentence that was different from the one that he received. And, and I just want to say one quick word about the, the facts of the case, the underlying facts of the, of the crime. It was a seven foot gun safe, gun safe by the way you're on. And like the, like issue one where, where the state's contention is that the defendant is taking the, some factual, some assertions from the record and assuming they're true. And using that as the basis to go forward with issue one. Really the defendant in this case is, with regard to the sentencing issues, doing the same thing. The defendant at sentencing gave a quite explanatory version of facts that the defendant on appeal is assuming the truth of here. Even though the court, number one, never accepted or indeed rejected the facts that the defendant testified to at sentencing, never passed on the defendant's credibility at sentencing. And what I want to point out is that the, is that those facts are controverted because the defendant at sentencing testified in contradiction of the PSI, in contradiction of the police reports contained in the PSI, including the account in the PSI of his own confession to police, where, where he told the police a very different and much more inculpatory story than the one that he testified to at trial, sorry at sentencing. And he also contradicted at sentencing the testimony of his, his girlfriend who also testified at sentencing. For example, she said that he drove the getaway car dragging the safe. He said he didn't. So again, where did the facts come from? That's, that's the question that, that's really being placed before this court here. The defendant is arguing that the facts that this court should assume are true are the, the, is the defendant's account of the crime that he gave at sentencing where, of course, that account was number one, not the subject of any factual finding by the court at sentencing, and number two, controverted by other accounts of the crime both in the PSI and at sentencing. If there are no questions, I'll stand on my brief with regard to everything else. That's great. Thank you. Thank you. Mr. Whitney. Thank you, Your Honors. Just responding to the last point first, I think it's rather commonplace that at sentencing, the facts introduced at sentencing in the PSI form the factual basis for the court's decision. Counsel said that, well, that James's account was controverted by other facts. Well, where are they? The only fact that was controverted was the one that she cited about there was a conflict between Tiffany, the girlfriend, and James regarding who drove the vehicle on that one occasion. That was the only thing that was contested in the sentencing hearing as far as that goes. To answer Justice Kaye's questions, it was the same attorney at the guilty plea hearing, Mr. Olson, and at the motion to withdraw the guilty plea hearing. And I think it is a fair inference that if counsel for the defense had stated, and in fact was in his pleading and he stated that, yes, there was a negotiated plea agreement and the state is silent, I think we can infer something from that that if the state's attorney said, no, this was an open plea or he believed that, he would have said something. And I cite some other cases in our brief where silence, yes, you can draw that inference. In addition, I think we have to ask ourselves, well, how is it that ordinarily a plea agreement gets disclosed to the court? There's no evidentiary hearing. The defense counsel, either the defense counsel or the state tells the court we have a plea. It didn't happen here. But what the state is trying to impose now on the motion to withdraw the plea is that there's some sort of evidentiary standard that has to be. You need sworn testimony. Conspicuous by its failure is any authority for that proposition. We have an officer in the court, and I cite the Alabama v. Holloway case by the Supreme Court, where the Supreme Court said officers of the court, when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath. This counsel would not have made this statement if he believed that the state was going to contravert it. And this case is a lot like Wright in that the disclosure of the plea agreement didn't come until later, after the initial hearing on the guilty plea. So looking at that, I think it is a fair conclusion to draw. There's no evidentiary standard that has to be met that the court was right to presume that there was an agreement. And counsel says, well, how can you infer from the question about whether the rule 402D3 admonishment was given that the court presumed that there was a guilty plea agreement? Well, why else would he ask, or is it your position that I did not give this morning, unless he believed, counsel, that there was a plea agreement? I don't follow the reasoning there. Finally, in response to one of the other justice case questions regarding the 604D, the law case does not stand alone. As a matter of fact, about one month ago, this court issued an opinion in People v. Willis. I have not asked the court to supplement the brief. I'm certainly willing to do that, given that it was decided in opinion approximately one month ago by this court. I was assuming I didn't need to do that, but I'll be happy if the court desires it to file a motion to supplement with that additional authority, basically following love. And really the principle of love is the thing here, that, you know, the Rule 604D certificate is not just a formality. It's not just whether you follow the language. You also have to actually do what you certify you did. And where the record impeaches the certificate, then that is error. And here the record clearly does. An 11-page transcript, and you misinform the court the same day you certify that your client got an admission he didn't get? I think the record clearly impeaches the certificate in this instance, Your Honors. So with that, if there's no questions. I think there are 10 minutes to supplement the motion, Your Honor. There's probably not much time. Mr. Whitney? Yes, that's fine. The court will give you 10 days to supplement with People v. Willis. Okay. 10 days from today, which, let's put a date on that. Larry, do you have a date? Give a date. Today's the 17th. 17th. Is that a weekend? Probably. I think that would be a Friday. Today's Tuesday would be a Friday. Okay. So until April 17th to supplement your brief with People v. Willis, and then we'll give the state an additional 10 days if you would like to respond to that. Okay? Thank you. All right. One last issue on that. There was a concession by the state that the defendant's minimus is to be amended to add one additional day. Are we at least in agreement on that? We are, Your Honor. Okay. All right. Thank you. This matter will be taken under advisement. Recess until? Recess until 1.30. Okay.